IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: | ) Chapter 11 |
| | ) |
| GILBERTSON RESTAURANTS, LLC | ) Case No. 04-00385 |
| BEATON, INC. | ) Case No. 04-00384 |
| KC BEATON HOLDING COMPANY, LLC | ) Case No. 04-00386 |
| BEATON HOLDING COMPANY, LLC | ) Case No. 04-00387 |
| | ) |
|     Debtors. | ) |

**ORDER AUTHORIZING EMPLOYMENT OF COUNSEL**

The above-captioned matter came on for hearing on March 16, 2004 on Creditor FL Receivables Trust 2002-A's objection to the applications of Debtors to employ counsel. In separate applications filed February 11, 2004, Debtors request orders authorizing employment of Douglas S. Draper and the law firm of Heller, Draper, Hayden, Patrick & Horn, L.L.C. and Thomas L. Flynn, Matthew T. Cronin and the law firm of Belin Lamson McCormick Zumbach Flynn, P.C. as counsel for Debtors. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

**STATEMENT OF THE CASE**

Creditor FL Receivables Trust 2002-A (the "Trust") alleges that Debtors' applications for authorization of employment of counsel should be denied due to an impermissible conflict of interest between Debtors Gilbertson Restaurants and KC Beaton Holding Company. Debtors assert that counsel are disinterested persons and do not represent interests or entities materially adverse to the estates.

At the hearing on March 16, 2004, the Court granted Debtors' Applications to employ counsel. In paragraphs 7 and 7a of its Order filed March 25, 2004, the Court indicated its approval of the Applications to employ counsel and requested that Debtors prepare appropriate orders. On April 2, 2004, the Trust filed a notice of appeal of the Court's ruling approving Debtors' employment of counsel. At the time of the appeal, Debtors' counsel had not yet provided the Court with proposed orders as requested in the March 25, 2004 Order. The Bankruptcy Appellate Panel for the Eighth Circuit then dismissed the Trust's appeal as premature given that Debtors

had not yet submitted the requested proposed orders. Debtors have now submitted proposed orders. The Court feels it is appropriate to supplement its ruling granting the Applications to employ counsel with written findings and conclusions pursuant to Fed. R. Bankr. P. 7052.

## FINDINGS OF FACT

Debtors Gilbertson Restaurants L.L.C., KC Beaton Holding Company, L.L.C., Beaton, Inc., and Beaton Holding Company, L.C. (collectively "Debtors") are separate legal entities, equally owned by Perry and Carol Beaton ("Beatons"). The same control group of directors and shareholders owns and operates each Debtor entity.

Beaton, Inc. ("Beaton") is a Cedar Rapids, Iowa based company that operates nineteen Burger King restaurants in Iowa and Illinois.

Beaton Holding Company ("Beaton Holding") is a real estate holding company that leases eighteen stores to Beaton. Beaton Holding owns the real estate under sixteen restaurants and leases two from a ground lessor.

Gilbertson Restaurants ("Gilbertson") is a Cedar Rapids, Iowa based company that is affiliated with Beaton and operates seven Burger Kings in and around Kansas City, Missouri.

KC Beaton Holding Company ("KC Beaton") is a real estate holding company. Gilbertson leases all seven of its stores from KC Beaton. KC Beaton owns the real estate under six of the restaurants and leases one from a ground lessor.

There are various inter-company claims. KC Beaton owes Gilbertson $167,080.28 on a note. Beaton owes Gilbertson $550.00. Beaton and Gilbertson hold unexpired leases from Beaton Holding and KC Beaton, respectively. Debtors have also guaranteed one another's debts. In particular, FL Receivables Trust's predecessor loaned KC Beaton $3.5 million pre-petition. As security, it received mortgages against real estate, assignment of leases, and assignments of liens in and of rents, profits, proceeds, revenues, and other monies generated from the real estate and the operations conducted on the real estate. Gilbertson and Beaton guaranteed this loan.

Debtors filed for Chapter 11 relief on February 10, 2004. Debtors filed separate applications for authorization of

employment of Attorney Douglas Draper of Heller, Draper, Hayden, Patrick & Horn, and Attorneys Thomas Flynn and Matthew Cronin of Belin, Lamson, McCormick, Zumbach, & Flynn on February 11, 2004.  The Trust objected to Debtors' applications.  It alleges that a conflict of interest arises from the simultaneous representation of Gilbertson and KC Beaton.

The Court approved interim appointment to allow for subsequent compensation in the event of a disqualification, but reserved its final ruling until the March 16, 2004 hearing.  On March 5, 2004, the Court ordered the joint administration of Debtors pursuant to Bankruptcy Rule 1015(b).

## CONCLUSIONS OF LAW

The Chapter 11 debtor-in-possession has the rights and powers of a Chapter 11 trustee.  11 U.S.C. § 1107(a).  Under 11 U.S.C. § 327(a), the trustee "may employ one or more attorneys . . . that do not hold or represent an interest adverse to the estate, and that are disinterested persons."  11 U.S.C. § 327(a).  The Code defines a "disinterested person" in relevant part as a person who:

> does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor . . . or for any other reason.

11 U.S.C. § 101(14)(E).  Case law has defined holding and representing an adverse interest.  Holding an adverse interest occurs when:

> two or more entities . . . possess or assert mutually exclusive claims to the same economic interest, thus creating either an actual or potential dispute between the rival claimants as to which, if any, of them the disputed right or title to the interest in question attaches under valid and applicable law.

In re Roberts, 46 B.R. 815, 826 (Bankr. D. Utah 1985), modified and rev'd in part on other grounds, 75 B.R. 402 (D. Utah 1987).  An advocate for such entities is representing

adverse interests. In re N.S. Garrott & Sons, 63 B.R. 189, 191 (Bankr. E.D. Ark. 1986).

11 U.S.C. § 327(c) provides a limited exception to the disqualification of a law firm representing both the debtor and a creditor. Section 327(c) provides that:

> In a case under Chapter . . . 11 of this title, a person is not disqualified from employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor . . . in which case the court shall disapprove such employment if there is an actual conflict of interest.

11 U.S.C. § 327(c).

According to the plain language of § 327(c), if a creditor objects and there is an actual conflict of interest, the court must disqualify the attorney. 11 U.S.C. § 327(c); In re Premier Farms, No. 03-04632F, slip op. at 3 (Bankr. N.D. Iowa Dec. 16, 2003); In re Nat'l Century Financial Enters., 298 B.R. 124, 132 (Bankr. S.D. Ohio 2003).

Disqualification due to a potential conflict of interest, however, is within the bankruptcy court's discretion. Premier Farms, No. 03-04632F at 3 (citing In re Marvel Entm't Group, 140 F.3d 463, 476 (3rd Cir. 1998)); Nat'l Century, 298 B.R. at 132. Determining whether a conflict is actual or potential is within the bankruptcy court's discretion based upon the facts of the case. In re BH&P, Inc., 949 F.2d 1300, 1316-17 (3d Cir. 1991).

In considering whether to disqualify Debtors' counsel, the court must "weigh all of the competing factors involved." In re Iorizzo, 35 B.R. 465, 468 (Bankr. E.D. NY 1983). The importance of honoring Debtors' right to choose their own counsel must weigh into the Court's decision. In re White Glove, Inc., No. 98-12493DWS, 1998 WL 226781, at *5 (Bankr. E.D. Pa. Apr. 29, 1998). The Court must consider the best interest of the Debtors' estates and the creditors. Nat'l Century, 298 B.R. at 131. While the increased time and expense involved in retaining new counsel unfamiliar with the case are not enough to overcome an actual conflict of interest, they are factors to be considered where there is a potential conflict. Katz v. Kilsheimer, 327 F.2d 633, 635 (2d Cir. 1964).

If a potential conflict develops into an actual conflict, methods other than disqualification are available to manage the problem, including the appointment of special counsel. In re O.P.M. Leasing Servs., 16 B.R. 932, 940-41 (Bankr. S.D. NY 1982). If the retention of counsel with a potential conflict is permitted, Debtors' counsel has a duty to monitor the situation and to act immediately upon the development of any actual conflict. White Glove, 1998 WL 226781, at *4. The Code provides for the estates' protection in the event that a potential conflict ripens into an actual conflict. The Court may deny compensation to an attorney who represents adverse interests. 11 U.S.C. § 328(c); In re Huddleston, 120 B.R. 399, 403 (Bankr. E.D. Tex. 1990).

Chapter 11 inter-company claims among multiple, related business entities are not per se actual conflicts of interest. In re Int'l Oil Co., 427 F.2d 186, 187 (2d Cir. 1970) (finding inter-company claims for $350,000 and $681,000, an inter-company guarantee of $1.5 million, and the granting of a lien by all four debtor corporations to another creditor were insufficient to warrant separate counsel). There is substantial support in the case law for a "wait and see" approach in this situation. Id. Courts have interpreted § 327(c) to allow "technical . . . conflicts . . . in connection with bankruptcy cases which involve multiple business entities." Garrott, 63 B.R. at 192. In such cases, "typically[] the various debtors are controlled by a single entity or person whose financial affairs are so entangled that it is impractical or impossible to administer the debtors' estates separately." Id.

The Trust argues that the landlord-tenant relationship between Debtors Gilbertson and KC Beaton creates an actual conflict of interest that requires disqualification of Debtors' counsel. Specifically, The Trust points to the assumption or rejection of unexpired, non-residential leases under 11 U.S.C. § 365(d)(4). Gilbertson entered into six leases with KC Beaton to operate its restaurants which are currently unexpired. In addition, Gilbertson and Beaton guaranteed KC Beaton's debts to The Trust.

In support of its position, The Trust relies primarily on Premier Farms, No. 03-04632F., and White Glove, 1998 WL 226781. These cases, however, are distinguishable from the facts before the Court.

In Premier Farms, the debtor's application for employment of counsel was denied where the proposed law firm also

represented the debtor's major secured lender. The denial of employment, however, was based largely upon the proposed law firm's longstanding relationship with that secured lender. Premier Farms, No. 03-04632F, at 3. The Court expressed concern that:

> Premier may well be a one-time client of the law firm. It is obvious that Bank has not been. In short, [the law firm] might be affected in its handling of the case by a desire not to make a regular client angry.

Id. Considering this long-term relationship combined with the "possible challenge to the validity and extent of Bank's liens, the adequate protection of Bank's liens, objection to or subordination of the Bank's claim, plan treatment, and stay litigation," the Court determined that there was a "potential if not actual conflict of interest." Id.

In this case, The Trust has expressed concern over only the assumption or rejection of the unexpired leases. Except for work performed in preparation for the bankruptcy filings, Debtor's counsel have not rendered any professional services to Debtors or their respective Creditors prior to these bankruptcy proceedings.

The Trust also relies on White Glove, 1998 WL 226781. While the White Glove court found that a law firm could not represent both the debtor corporation and debtor's individual landlord, the court's decision was based on a multitude of factors not present in this case. In addition to the assumption or rejection of leases, the court noted concerns about the landlord's "compensation package, and the terms of any contemplated sales of assets." White Glove, 1998 WL 226781, at *4. The individual landlord was not in Chapter 11. Id. Most significantly to the White Glove court, the landlord owed the law firm pre-petition, outstanding fees for unrelated services. Id. at *5. The court noted that "a debtor's attorney with outstanding fees as of the petition date is a creditor and therefore not 'disinterested' as is required for employment under § 327." Id. (citing In re Sharon Steel Corp., 19 F.3d 138 (3d Cir. 1994)). The White Glove court did, however, allow the law firm to represent both corporate debtors despite inter-company claims, noting that "[i]f, as the cases develop, . . . the intercompany claims are disputed, I will not hesitate to revisit this issue." Id. at *4.

Debtors are corporate entities that are all in Chapter 11. There are no outstanding fees to render Debtors' attorneys a creditor. The concerns raised in <u>White Glove</u> are largely inapplicable to the facts of this case.

There is no actual conflict of interest at this time. The Trust's allegations are essentially based on inter-company claims, which do not create a per se actual conflict. <u>Int'l Oil</u>, 427 F.2d at 187. Debtors' business relationships are clearly intertwined. The Debtors' interdependence was in part intentional, as the Beatons own all Debtors in a common enterprise with the goal of owning and operating Burger King franchises. At the present time, Debtors share an "identity of interest" or "unity of purpose" in their common goal to reorganize and continue operating Burger King franchises. Gilbertson and KC Beaton are dependent upon one another. When one succeeds, so does the other. In order to continue operating Burger King restaurants, Gilbertson must have locations. KC Beaton's rents are based upon a percentage of gross sales, not a fixed rental. The interests of Gilbertson and KC Beaton will be best served at this point if Gilbertson continues to operate. Thus, Debtors have parallel interests at the present time. <u>O.P.M.</u>, 16 B.R. at 941.

For these reasons, this Court adopts a "wait and see" approach. The practical reality of jointly administered, interdependent Chapter 11 bankruptcies lends support to this conclusion. Avoiding unnecessary costs and delays is in the best interest of the estates and their respective creditors. <u>In re Guy Apple Masonry Contractor</u>, 45 B.R. 160, 167 (Bankr. D. Ariz. 1984). Requiring each legal entity to retain separate counsel unfamiliar with the case would be an unnecessary drain on the estates' assets. <u>Iorizzo</u>, 35 B.R. at 467-68.

## CONCLUSION

This Court adopts a "wait and see" approach to the potential conflict of interest between Gilbertson and KC Beaton. At this point, no actual conflict has arisen and Debtors have a common purpose. Debtors already have serious financial problems. The additional time and expense of additional counsel are unnecessary at this time. If the potential conflict ripens into an actual conflict, it will be resolved at that time. A preemptive disqualification is not in the best interest of the estates or their respective creditors.

**WHEREFORE,** Debtors' Applications to employ counsel are GRANTED.

**FURTHER**, the Court hereby approves Debtors' retention and employment of Douglas S. Draper and the law firm of Heller, Draper, Hayden, Patrick & Horn, L.L.C. and Thomas L. Flynn, Matthew T. Cronin and the law firm of Belin Lamson McCormick Zumbach Flynn, P.C. as counsel for Debtors.

**SO ORDERED** this 3rd day of May, 2004.

_/s/ Paul J. Kilburg_
PAUL J. KILBURG
CHIEF BANKRUPTCY JUDGE