IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| GILBERTSON RESTAURANTS, LLC | ) | Bankruptcy No. 04-00385 |
| BEATON, INC. | ) | Bankruptcy No. 04-00384 |
| KC BEATON HOLDING COMPANY LLC | ) | Bankruptcy No. 04-00386 |
| BEATON HOLDING COMPANY, LLC | ) | Bankruptcy No. 04-00387 |
| | ) | |
| Debtors. | ) | |

**ORDER RE MOTION FOR RELIEF FROM AUTOMATIC
STAY OR, IN THE ALTERNATIVE, FOR ADEQUATE PROTECTION
(DOCUMENT #71 AND AMENDED BY DOCUMENT #137)**

On May 5, 2004, the above-captioned matter came on for hearing pursuant to assignment. Present at the hearing were Attorney Douglas Draper for Debtors; Dan Childers for the Unsecured Creditors' Committee; Paul Battista and Donald Neiman for Burger King Corporation; and Eric Lam and Larry Gutz for FL Receivables Trust. Evidence was presented and briefs were submitted. This matter is now ready for resolution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

**STATEMENT OF THE CASE**

The matter before the Court is a Motion filed by FL Receivables Trust 2002-A. FL Receivables seeks to pursue foreclosure rights against restaurant equipment located in four Burger King Stores in the State of Missouri operated by Debtor Gilbertson Restaurants, LLC ("Debtor"). It has three actions pending in Missouri State Courts and power of sale foreclosures were stayed by Debtor's bankruptcy cases. Debtor continues to operate the four restaurants without offering adequate protection. FL Receivables Trust wishes to foreclose its equipment liens or receive payments equal to scheduled loan payments.

Debtor has filed a resistance. It asserts the equipment is not losing value and is insured. Debtor states that all equipment is in working order and being well maintained. It asserts that value will reduce greatly if the Trust is allowed to foreclose.

Burger King Corporation joins Debtor's resistance. It asserts that FL Receivables has no proof the equipment is

depreciating in value.  The Unsecured Creditors' Committee also joins in Debtor's resistance.

## STATEMENT OF FACTS

Debtor Gilbertson Restaurants, LLC filed a voluntary Chapter 11 petition on February 10, 2004.  FL Receivables Trust is a significant creditor in this case and the other related cases captioned above.  FL Receivables loaned substantial amounts of money to Debtor which was utilized to finance the purchase of restaurant equipment which is located in four Burger King restaurants in the State of Missouri.  It appears uncontested that FL Receivables holds a valid security interest in all of this restaurant property.

The amount of the initial loan made by FL Receivables to Debtor for the equipment in these four restaurants is approximately $1.17 million.  The total monthly payments on this indebtedness is approximately $25,000.  The remaining indebtedness, as of the time of the petition date, was approximately $680,000.

No formal appraisal of this equipment has been undertaken.  FL Receivables Trust presented evidence as to the present value based largely upon depreciation schedules from Debtor's tax returns.  The four loans in question were made at various times during calendar year 2000.  The security interests are filed as UCC filings in the appropriate counties in Missouri.  No payments were made by Debtor on this indebtedness for several months prior to the petition date and no payments have been made since the filing of the petition on February 10, 2004.

Based upon the depreciation schedules, FL Receivables states that no equity cushion exists and the value of the property has greatly depreciated.  Debtor asserts that there has been no formal appraisal of this property.  Depreciation claimed in tax schedules is an instrument purely of tax law and has little, if any, relationship to actual value or actual depreciation of the equipment in question.  Debtor presented testimony that it has spent $11,000 on maintenance of the equipment since the petition date.  Todd Gilbertson testified that Debtor spends approximately 1% of gross sales on preserving the value of the equipment.  He testified that most of the equipment is stainless steel and is of long duration.  The equipment is presently about five years old and there is testimony that this type of equipment does not deteriorate in

value at a rapid rate and there would be little decline over a 12 month period.

## CONCLUSIONS OF LAW

Under § 362(d), a creditor may have relief from the automatic stay to enforce its remedies regarding collateral (1) for cause, including the lack of adequate protection of an interest in property or (2) if the debtor does not have equity in the property and it is not necessary to an effective reorganization.  The creditor seeking relief from the stay has the burden of proof on the issue of the debtor's equity in the property and the opposing party has the burden of proof on all other issues.  11 U.S.C. § 362(g).

As to § 362(d)(1), the most basic component of adequate protection is reimbursement to the creditor for a decrease in the value of the security, and thus of its lien, caused by the imposition of the automatic stay or use of the collateral by the debtor.  United States Savs. Assoc. v. Timbers of Inwood Forest Assocs., 484 U.S. 365, 370 (1988); In re Offerman Farms, Inc., 67 B.R. 279, 281 (Bankr. N.D. Iowa 1986).  The interest protected "includes the right of a secured creditor to have the security applied in payment of the debt upon completion of the reorganization; . . . that interest is not adequately protected if the security is depreciating during the term of the stay."  Timbers of Inwood Forest, 484 U.S. at 370.

Debtor has the burden of establishing that FL Receivables is adequately protected.  In re Weiser, Inc., 74 B.R. 111, 115 (Bankr. S.D. Iowa 1986).  The existence of adequate protection is a question of fact.  In re Martin, 761 F.2d 472, 474 (8th Cir. 1985).  It is a flexible concept designed to ensure that the creditor receives the value for which it bargained.  Id.

> In any given case, the bankruptcy court must necessarily (1) establish the value of the secured creditor's interest, (2) identify the risks to the secured creditor's value resulting from the debtor's request for use of cash collateral, and (3) determine whether the debtor's adequate protection proposal protects value as nearly as is possible against risks to that value consistent with the concept of indubitable equivalence.

Martin, 761 F.2d at 477.

3

Other factors to consider are whether the debtor has equity in the property, whether the property is declining in value and whether the debtor is current on postpetition payments due to the creditor. In re Atrium Dev. Co., 159 B.R. 464, 471 (Bankr. E.D. Va. 1993). Existence of an equity cushion can be sufficient to provide adequate protection. The court in In re Rancourt, 123 B.R. 143, 152 (Bankr. D.N.H. 1991), stated that a clear showing of an equity cushion, sufficient at least to cover debts until plan confirmation, adequately protected the creditor as there was no real danger of the debt not being covered in full.

## CONCLUSIONS

The Court must first determine whether there exists an equity cushion in this property. FL Receivables submitted substantial evidence as to the cost or value at the time of the purchase of the equipment in 1999 or 2000. It bases present value, however, solely upon tax depreciation schedules. If the tax depreciation schedules are considered a valid measure of depreciation, it is clear that this property has depreciated greatly in value. The Court recognizes that there is legal authority for the proposition that, under appropriate circumstances, depreciation schedules can be used as a measure of depreciation. However, this is dependent upon the type of property, as well as many other factors, including periodic maintenance. In the present case, the Court concludes that the depreciation schedules standing by themselves do not provide an accurate measure of present value or decreased value over the years.

There is substantial evidence in this record that much of this equipment is stainless steel and does not depreciate rapidly. There is additional evidence that Debtor has spent 1% of gross sales on preserving the value of this equipment. Debtor has spent $11,000 on maintenance of the equipment since the petition date. Additionally, this equipment is only approximately five years old. There is testimony in the record that the value of this type of property does not decline dramatically over a 12 month period.

Based upon the record presented, the Court has a basis for determining the initial value of this property. However, absent an accurate appraisal of this property, the Court does not feel that tax depreciation schedules, in and of themselves, accurately measure the current value of the equipment. While common sense might cause one to believe that the property is obviously worth less than when new, no

4

accurate conclusions can be drawn from t his record about the present value of this property beyond that statement.

Assuming, however, that no equity cushion exists in this property, the Court must examine the other factors set out in case law to ensure that FL Receivables receives the value for which it bargained.  In this case, it is clear that Debtor is providing good, sound periodic maintenance for this property. It is not the type of property that inherently depreciates at a rapid rate.  It is apparently durable property and, with a sound maintenance program, will depreciate very little over a one year period.

This case is on an accelerated track.  A plan and disclosure statement have already been filed.  This case will be resolved in some manner or another well within a year. Based upon all of these criteria, it is the conclusion of this Court that there is not a substantial risk during the reorganization phase of this proceeding that the secured creditor's collateral value will diminish in any significant respect.

During the pendency of this Motion, Debtor has offered various combinations of items which it asserts are sufficient to constitute adequate protection.  Debtor has offered, as adequate protection, a waiver of Debtor's 11 U.S.C. § 506(c) surcharge rights against FL Receivables Trust for any costs and expenses incurred in preserving the equipment during the course of these proceedings.  Debtor has also offered continuing insurance; it has offered continued maintenance of the equipment in accordance with Burger King standards; it has offered to continue committing 1% of gross sales to preserving the value of the equipment; it has committed to providing replacement liens to the extent necessary; and it has offered to pay $2,000 per month total for the equipment in the four Missouri stores which is the subject of this proceeding.

Adequate protection is a flexible concept designed to ensure that a creditor's interest is protected during the reorganization of a debtor.  Ultimately, this Court concludes that, because of the nature of the goods in question, there is little inherent depreciation in the value of the items so long as adequate maintenance is provided.  These items are clearly necessary to the reorganization of Debtor.  It appears that Debtor is cognizant of the necessity for preserving the equipment in good working condition.  It has committed to utilizing funds necessary to preserve these assets.  As such,

5

the Court concludes that the adequate protection offers made by Debtor are adequate.

**WHEREFORE**, FL Receivables Trust's Motion to Modify Stay is DENIED.

**FURTHER**, FL Receivables Trust's Motion for Adequate Protection is GRANTED as listed below.

**FURTHER**, as adequate protection, Debtor shall provide the following:

1. Continued insurance on the equipment which is the subject of this Motion.

2. Commitment of 1% of gross sales to preserving and maintaining this equipment.

3. Periodic maintenance as necessary to maintain the operational quality of this machinery.

4. Replacement liens on the property to the extent necessary.

5. Waiver of Debtor's 11 U.S.C. § 506(c) surcharge rights.

6. A monthly payment of the total sum of $2,000 for the equipment in the four restaurants in question as additional adequate protection during these proceedings. The first payment shall be made June 1, 2004 and each month thereafter as a component of adequate protection until further order of this Court.

**SO ORDERED** this 20th day of May, 2004.

_____
PAUL J. KILBURG
Chief Bankruptcy Judge