IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| GILBERTSON RESTAURANTS, LLC | ) | Bankruptcy No. 04-00385 |
| BEATON, INC. | ) | Bankruptcy No. 04-00384 |
| KC BEATON HOLDING COMPANY LLC | ) | Bankruptcy No. 04-00386 |
| BEATON HOLDING COMPANY, LLC | ) | Bankruptcy No. 04-00387 |
| | ) | |
| Debtors. | ) | |

**ORDER RE EXECUTORY NATURE OF REINHART CONTRACTS**

This matter came before the undersigned on May 5, 2004. Debtors were represented by attorney Douglas Draper. Reinhart FoodService, Inc. was represented by attorneys Faye Feinstein and John Titler. Attorney Dan Childers represented the Unsecured Creditors Committee. After hearing arguments of counsel, the Court took the matter under advisement. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

**STATEMENT OF THE CASE**

This matter arises from Reinhart's Motion to Compel Assumption or Rejection of Executory Contracts. The sole issue under advisement is whether the contracts in question are executory within the meaning of § 365. The issue of the timing of assumption or rejection has now been deferred until after the Court considers the adequacy of Debtor's Disclosure Statement and/or FL Receivables Trust's motion to dismiss or convert.

Reinhart FoodService, Inc. supplies Debtors' 26 Burger King restaurants with substantially all the products they need to operate their businesses. In assignment of rights agreements ("AORs"), Debtors Gilbertson Restaurants, LLC and Beaton, Inc. ("Debtors") have appointed Restaurant Services, Inc. ("RSI") as Distribution Manager. Exhibit A. Under the agreements, RSI has "exclusive authority" on behalf of Debtors to contract for distribution services from distributors approved by Burger King Corp. The AORs provide that "[Debtor] shall not act to receive bids, negotiate terms or sign contracts for distribution services, but rather has granted said rights exclusively to RSI."

RSI has Distributor Service Agreements ("DSA") with Reinhart.  Exhibit B.  Under the agreements, Reinhart supplies products to certain designated Burger King restaurants for which RSI has been appointed as Distribution Manager under an AOR, such as Debtors'.  The agreements include a provision that franchisees, such as Debtors, are obligated to pay Reinhart for its distribution services.  Exhibit B, p. 11 ¶ 5.2.  Debtors have executed Terms Agreements as set out in paragraph 5.2 of the DSA, in the form set out in Exhibit 6.2 of the DSA.  In paragraph 7.1, the DSA provides, in pertinent part:  "[Reinhart] shall stand ready to serve [Debtors' restaurants] as a 'full-line' distributor of all Products which [the restaurants] . . . order regularly and/or request be made available for purchase."

At the time Debtors filed their Chapter 11 petitions, these agreements were in effect and the parties were operating pursuant to their terms.  Because Debtors had defaulted in payments prepetition, Reinhart had changed Debtors' credit terms to require cash payment at or before delivery.  This is authorized by the Terms Agreement signed by Debtors, in paragraph 4.  Exhibit C.  Debtors placed orders for supplies from Reinhart on at least a weekly basis.  Based on Debtors' historical usage and inventory depletion statistics, Reinhart contracts from its suppliers about two weeks prior to receiving Debtors' orders.  At the petition date, Debtors were approximately $600,000 in arrears in payments to Reinhart.

Debtors listed Reinhart and RSI as parties to executory contracts on Schedule G of their Chapter 11 petitions.  In the Plans of Reorganization now on file, these contracts are not included in Exhibit 1 showing "Executory Contracts To Be Assumed" and are not otherwise referred to in the Plans.

Reinhart argues the three agreements constitute an executory contract between it and Debtors.  Reinhart is obligated to supply product to Debtors; Debtors must place orders for product pursuant to defined procedures and pay according to defined terms.

Debtors believe the agreements are not executory.  They assert any failure to place an order for products or failure to pay for products would not result in a breach of the agreements because Reinhart would not be excused from performance on subsequently placed orders.  Further, any continuing obligation by Debtors is within Debtors' sole control because Debtors hold the option to perform such obligation, i.e. placing orders.  Debtors argue the agreements

are non-exclusive distribution agreements with no requirement Debtors order only from Reinhart. They assert Debtors could terminate their AOR with RSI at any time with no recourse by Reinhart.

**CONCLUSIONS OF LAW**

Section 365(a) permits a trustee or debtor-in-possession to "assume or reject any executory contract or unexpired lease of the debtor," subject to bankruptcy court approval. The Code does not define the term "executory contract." The Eighth Circuit has adopted the "Countryman" definition of executory contracts:

> a contract under which the obligations of both the [debtor] and the other party to the contract are so unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other.

Cameron v. Pfaff Plumbing & Heating, Inc., 966 F.2d 414, 416 (8th Cir. 1992). The legislative history of § 365 states that the term executory contract "generally includes contracts on which performance remains due to some extent on both sides." S. Rep. No. 95-989, 95th Cong., 2d Sess. 58 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5844. Id. This statement was quoted approvingly in NLRB v. Bildisco & Bildisco, 465 U.S. 513, 522 n.6 (1984). "The Countryman/Bildisco standard 'was meant to exclude from its scope only those contracts from which the Debtor's estate had enjoyed the full benefit pre-petition.'" Cameron, 966 F.2d at 417 (citations omitted). After a debtor commences a bankruptcy proceeding, but before executory contracts are assumed or rejected under § 365(a), those contracts remain in existence, enforceable by the debtor but not against the debtor. United States v. Dewey Freight Sys., Inc., 31 F.3d 620, 624 (8th Cir. 1994).

"An 'executory contract' that can be rejected in bankruptcy is a contract on which performance remains due on both sides at the time of the bankruptcy petition." In re Newcomb, 744 F.2d 621, 624 (8th Cir. 1984). The Eighth Circuit focuses on the date the petition was filed to ask whether the parties had substantial and material obligations to perform in the future under the terms of the agreement. Jenson v. Continental Fin. Corp. 591 F.2d 477, 481 (8th Cir. 1979) (applying Countryman definition under the Bankruptcy Act). In other words, "[a]t the time of filing, does each party have something it must do to avoid materially breaching

the contract?" In re Robert L. Helms Constr. & Dev. Co., 139 F.3d 702, 705 (9th Cir. 1998) (considering whether an option contract is executory).

Reinhart asserts that its relationship with Debtor under the contracts is similar to that in Sharon Steel Corp. v. Nat'l Fuel Gas Distribution Corp., 872 F.2d 36, 37 (3d Cir. 1989). The Chapter 11 debtor was a steel manufacturer; the creditor provided the debtor with natural gas. Id. The court found that the parties had reciprocal obligations under the contract – the creditor promised to provide the product and the debtor promised to purchase the product at a certain price. Id. at 39. Thus, the agreement was an executory contract under § 365. Similarly, in In re Sun Ray Bakery, Inc., 5 B.R. 670, 671-72 (Bankr. D. Mass. 1980), the court considered a contract whereby the debtor had an obligation to deliver products for distribution and the consignees had an obligation to distribute the goods and pay when invoiced. It found the contracts were executory, applying the Countryman definition. Id. at 672. The court noted the contract included a termination provision which the debtor had not exercised prepetition. Id. In In re Herbert, 806 F.2d 889, 893 (9th Cir. 1986), the court found that a franchise agreement which had been terminated prepetition was not executory within the meaning of § 365. At the time the bankruptcy petition was filed, neither party owed future performance. Id.

## ANALYSIS

The Court's initial focus in this analysis must be upon the relationship of the contracting parties as of the date Debtors file their bankruptcy petitions. If, at that time, the parties had substantial and material obligations to perform in the future under the terms of the contract, the contract is executory. The question to answer is whether each party has something it must do to avoiding materially breaching the contract.

Debtors assert their contractual relationships with Reinhart are not executory. They base this assertion in part on their right to terminate the AOR with RSI as well as on their interpretation that they have the option but are not required to place orders with Reinhart.

As Reinhart argued at the hearing, although any contracting party can terminate a contract, Debtors had not done so at the time they filed their Chapter 11 petitions.

4

The contracts were in force and the parties were operating thereunder at the date of the petitions. This is evident from statements of counsel at the hearing and from Debtors' designation of Reinhart as a critical trade vendor in a motion filed February 19, 2004, but since withdrawn, asking for authority to pay Reinhart and other vendors in order to maintain the supply of goods on which their businesses rely.

The Court is not convinced that the agreements in question give Debtors merely an option, but not an obligation, to purchase products from Reinhart. In the AOR, Debtors assigned to RSI exclusive authority to enter into contracts for distribution services. RSI, on Debtors' behalf, contracted with Reinhart to provide such services. Debtor agreed to pay Reinhart for its distribution services in the Terms Agreement which was a requirement of RSI's contract with Reinhart. The AOR ends Debtors' ability to contract for distribution services on its own behalf.

Although Debtors may have had the ability to terminate the AOR with RSI, they did not do so prepetition. On the petition date, Debtors, through the assignment of rights to RSI, and Reinhart had duties and obligations under the agreements with performance remaining due on both sides. These agreements constitute executory contracts within the meaning of § 365.

**WHEREFORE**, Debtors' agreements with Reinhart FoodService, Inc. are executory contracts under § 365.

**SO ORDERED** this 25th day of May, 2004.

PAUL J. KILBURG
CHIEF BANKRUPTCY JUDGE

5