```
                 UNITED STATES BANKRUPTCY COURT
                FOR THE NORTHERN DISTRICT OF IOWA


IN RE:                                ) Chapter 11
                                      )
GILBERTSON RESTAURANTS, LLC           ) Case No. 04-00385
BEATON, INC.                          ) Case No. 04-00384
KC BEATON HOLDING COMPANY, LLC        ) Case No. 04-00386
BEATON HOLDING COMPANY, LLC           ) Case No. 04-00387
                                      )
      Debtors.                        )
```

**ORDER RE CONFIRMATION OF THIRD AMENDED AND
RESTATED PLAN OF REORGANIZATION FOR
BEATON, INC.**

This matter came before the undersigned on February 23, 2005 pursuant to assignment. The parties appeared as follows:

a. Douglas Draper and Warren Horn for Debtors
b. Chris Graham, Larry Gutz, and Eric Lam for FL Receivables Trust 2002-A
c. Dan Childers for the Unsecured Creditors Committee
d. John Waters for the Iowa Department of Revenue
e. Paul Battista and Don Nieman for Burger King Corporation
f. Lynn Hartman for Wells Fargo Bank
g. John Titler for Reinhart FoodService
h. Greta McMorris for Platte Valley Bank
i. Marty Sutcliffe for Captec Franklin Trust
j. Janet Reasoner for U.S. Trustee

After the close of evidence, the primary parties requested time to obtain a transcript. It was agreed briefs would be due ten (10) days after the transcript was completed. The transcript was filed on March 14, 2005. Briefs were due March 24. As of March 24, the record was complete and the case considered under advisement. All briefs are now filed and this matter is ready for resolution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

**STATEMENT OF THE CASE**

Debtor Beaton, Inc. filed its Chapter 11 petition on February 10, 2004. It filed its Third Amended and Restated Plan of Reorganization on October 27, 2004. The only significant and consistent objection throughout this case is Creditor FL Receivables Trust 2002-A ("FL Trust"). FL Trust's objections raise issues of bad faith, feasibility and improper

substantive consolidation.  In its post-hearing brief, FL
Trust also asserts "side deals" with certain creditors
precludes confirmation.  Additionally, it argues some votes of
unsecured creditors should be disregarded, which results in
the Plan violating the absolute priority rule.

### INITIAL MATTERS

The Iowa Department of Revenue filed an objection to
confirmation.  At the hearing, the parties indicated that this
objection had been resolved.  The Court has now granted a
Motion for Consent Order which recognizes the IDR's claim and
resolves its objection.

### EVIDENTIARY OBJECTION

Separate from its post-hearing brief, FL Trust filed a
"Renewed Objection" to admission of Amended Exhibit 3 into
evidence at the confirmation hearing.  It argues the exhibit
constitutes hearsay and is not a business record, it lacks
foundation, and this amended version was not timely disclosed.
FL Trust also asserts this is not a summarization under
Federal Rule of Evidence 1006.  The Court overruled FL Trust's
objection at the hearing, stating it is essentially
constituted a summary of what witness, Ms. Kathy Frerichs,
provided in her testimony.

After consideration, the Court concludes that it will
enter its ruling on confirmation of the Plan without
consideration of Amended Exhibit 3.  In so doing, it assumes,
for the purposes of this ruling, that Amended Exhibit 3 is
hearsay and not admissible.

### POST-HEARING LENDER STATEMENTS

On March 24, 2005, the Unsecured Creditors Committee
filed Statements by several lenders which were solicited by
Debtors regarding the lenders' understanding of the Beaton,
Inc. Plan.  The Committee requests the Court enroll these
Statements as part of the record herein.  An additional
lender, Platte Valley Bank, also filed a similar statement.
At trial, some, if not all, of these lenders indicated a
desire to make a "professional statement."  The Court
indicated they should be sworn in and testify.  No further
offer was made.

The Court concludes that these statements are not part of
the record upon which it will base its decision regarding

confirmation of Beaton, Inc.'s Plan. The record closed at the end of the confirmation hearing.

### FL TRUST'S POST-HEARING BRIEF AND MEMORANDUM

FL Trust filed its post-hearing brief on March 24, 2005 (doc. 720). In so doing, it also raises matters which were not previously raised and are now presented for the first time. It asserts objections to confirmation based on § 1129(a)(2), starting on page 3 of the brief, and §§ 1129(a)(8) and 1129(b)(2), starting on page 35 of the brief. It claims that, based on testimony at the confirmation hearing, Debtor has entered into so-called "Side Deals" with certain unsecured creditors. FL Trust argues that Debtor's failure to disclose these "Side Deals" bars confirmation. It also asserts that the "Side Deals" disqualify these creditors' votes supporting confirmation, which in turn results in the failure of Class 8 to vote to accept the plan.

Based on the trial record, the Court concludes, as a fact, that no "Side Deals" exist. Therefore, these post-trial arguments are rejected. FL Trust has been provided every opportunity to pursue discovery and offer any evidence it felt impacted on the confirmation of Debtor's Plan at the hearing. It offered no direct testimony of its own. It offered no exhibits regarding these allegations.

In making these late found objections, it relies on the testimony of Ms. Kathy Frerichs, Debtor's comptroller. She testified that unsecured creditors in Class 8 with contingent claims would not be receiving payment from Debtor Beaton, Inc., but would look to payment from another of the Beaton entities with whom their claims are non-contingent. For example, Ms. Frerichs testified that U.S. Bank has a contingent claim against Beaton, Inc. and a secured claim against Beaton Holding Company. Ms. Frerichs' understanding is that U.S. Bank would not receive payments from Beaton, Inc. because it would be paid by Beaton Holding. FL Trust characterizes this understanding as a "Side Deal" which undermines the validity of disclosures and voting rights in this case.

The Court concludes that, in addition to being untimely, there is no factual basis for FL Trust's objections and overrules the same. Specifically, the Disclosure Statement, starting at page 21, lists all secured debt. It explains which Debtors are principally liable and which are liable as guarantors. There is nothing surprising about the holder of a

guaranteed debt accepting payment from the principal debtor prior to seeking recourse from the guarantor. Furthermore, this method of treating the contingent claims which arise from guarantees operates to FL Trust's benefit. If creditors with contingent claims in the Beaton, Inc. case are being paid by another entity, Beaton, Inc. will presumably be in a position to pay more toward FL Trusts' claim. Based on the foregoing, FL Trust's post-hearing objections to confirmation based on §§ 1129(a)(2), (a)(8) and (b)(2) are overruled and denied.

As part of its initial objections, FL Trust complains that portions of the plan need to be clarified. Counsel for Debtor indicated at the hearing that Debtor and FL Trust will work out non-substantive revisions to the language of the plan in the event the plan is confirmed. These are represented to be stylistic or scrivener errors which have no effect on the confirmability of the plan. At the hearing, counsel for FL Trust stated that: "I think that if eventually the court enrolls an order of confirmation, I think between Mr. Draper and me, we can work out the language satisfactory to both sides." Transcript at p. 10. In its post-hearing brief, starting at page 33, FL Trust complains the plan contains unclear and incomprehensible terms. It asserts Debtor should replace its use of "Cash Flow" with "net operating income." It also argues that five separate items in the Plan are unclear. It is this type of language to which the parties were referring at trial. The Court concludes that FL Trust should be held to its agreement at the hearing that its counsel and counsel for Debtor will work out satisfactory language. FL Trust's objections on this issue are denied.

## FINDINGS OF FACT

At the confirmation hearing, Debtor presented testimony by Kathleen Frerichs, Debtor's comptroller and Perry Beaton, its president. Debtor also presented testimony by Kristin Hartman, senior director of field marking and sales for Burger King Corporation. No other party presented direct testimonial evidence, other than by cross-examining Debtor's witnesses. FL Trust is the only party to object to the plan or vote against the plan. All other creditors have accepted the plan.

Ms. Frerichs testified that Debtor employs approximately 600 people. Since filing the petition, all post-petition bills and rent have been paid. Increased sales are expected to increase profit because Debtor's fixed costs should be stable allowing more sales to flow through to net income. Although the plan calls for payment within twelve years,

4

Debtor projects that unsecured creditors will be paid in five years.

    Mr. Beaton testified that Burger King restaurants are doing better with higher margin products and increased sales. The plan has funding from Burger King to modernize restaurants. Mr. Beaton testified that his intentions have remained the same throughout this case – to pay all creditors in full with interest. He stated the Plan allows Debtor to do that.

    Some management positions have been eliminated and taken over by Mr. Beaton and his wife, Carol Beaton. Perry and Carol Beaton's salaries are being increased. The total of these proposed salaries, however, is less than the total would have been if Debtor had not eliminated the other management positions. All potential avoidance claims against the Beatons are being preserved under the Plan and may be asserted in the event Debtor defaults under the Plan.

    Both Ms. Frerichs and Mr. Beaton testified that the future operations of Debtors' Burger King stores have more than a reasonable likelihood of success. Debtor has experienced significant sales growth during calendar year 2004. Mr. Beaton further testified that Debtor's sales growth for calendar year 2004 was 9.25%, that January 2005 was up 18.8% when compared to January 2004 and that February 2005 was up about 16% when compared to February 2004. Notwithstanding the sales growth experienced by Beaton and the entire Burger King system during 2004 and into early 2005, Debtor's payment Projections assume only a 1.5% sales growth in years 1 and 2 of the Plan and 1.0% in years 3 through 7 and zero thereafter. Perry Beaton testified that he wanted to reflect the optimism that he has in sales growth, but wanted to be conservative. Mr. Beaton estimates that, even using conservative growth rates, creditors can be paid in full within five years, i.e. seven years earlier than the twelve-year payout provided in the plan. Debtor's major food supplier has extended its credit terms. Franchiser Burger King Corp. has committed to the Plan. Debtor's current creditors are continuing to do business with Debtor.

    Through the testimony of Ms. Frerichs and Mr. Beaton, on direct- and cross-examination, it is apparent that the majority of the unsecured claims included in Class 8 in the total amount of $8.168 million consist of contingent guaranty claims. These contingent claims will not receive a distribution under Debtor's Plan as long as the primary

obligor on such claims, i.e. Beaton Holding Company, is in fact making payments thereon.  Any payments made by the primary obligor to such creditors will necessarily reduce the overall obligation of Debtor.

Ms. Kristin Hartman presented testimony evidencing the positive sales trend in the nationwide Burger King system. Burger King's new senior management has made changes in the business and introduced new products that have increased sales.  Burger King has also increased its movie tie-ins which increases sales.

## CONCLUSIONS OF LAW

In order to confirm a Chapter 11 Plan, the Court must find that each of the required elements of 11 U.S.C. § 1129(a) have been met.  In re Internet Navigator Inc., 289 B.R. 128, 131 (Bankr. N.D. Iowa 2003).  The proponent of the plan bears the burden of proof with respect to each element of § 1129(a) under a preponderance of the evidence standard.  Id.; In re Briscoe Enterprises, Ltd. II, 994 F.2d 1160, 1165 (5th Cir. 1993).

## GOOD FAITH

Section 1129(a)(3) requires that "[t]he plan has been proposed in good faith and not by any means forbidden by law." In the context of a chapter 11 reorganization, a plan is considered proposed in good faith "if there is a reasonable likelihood that the plan will achieve a result consistent with the standards prescribed under the Code."  Hanson v. First Bank, 828 F.2d 1310, 1315 (8th Cir. 1987).

Whether a plan is proposed in good faith turns on an examination of the totality of the circumstances surrounding the plan and the bankruptcy filing.  Noreen v. Slattengren, 974 F.2d 75, 76 (8th Cir.1992).  "The court must focus on factors such as whether the debtor has stated debts and expenses accurately; whether the debtor has made any fraudulent misrepresentation to mislead the bankruptcy court; or whether the debtor has unfairly manipulated the Bankruptcy Code."  In re Barger, 233 B.R. 80, 83 (B.A.P. 8th Cir. 1999). The good faith requirement can be met if the plan is proposed for the purpose of reorganizing the debtor, preserving the value of the bankruptcy estate and distributing that value to the creditors.  In re Union Financial Services Group, Inc., 303 B.R. 390, 419 (Bankr. E.D. Mo. 2003).

6

There is a legal distinction between the good faith that is a prerequisite to filing a Chapter 11 petition and the good faith that is required to confirm a plan of reorganization. In re Madison Hotel Assocs., 749 F.2d 410, 424-26 (7th Cir. 1984).

> Section 1112(b) provides that a Chapter 11 petition may be dismissed for cause if it appears that the petition was not filed in good faith.  Bad faith exists if there is no realistic possibility of reorganization and the debtor seeks merely to delay or frustrate efforts of secured creditors.  The good faith that is required to confirm a plan of reorganization requires the plan to achieve a result consistent with the objectives and purposes of the Bankruptcy Code.

In re Boulders on the River, Inc., 164 B.R. 99, 103-04 (B.A.P. 9th Cir. 1994) (citations omitted).  These are altogether different inquiries.  In re Gleason, 305 B.R. 464, 467 (N.D. Ill. 2004).

**FEASIBILITY**

One of the requirements of confirmation is a finding by the court that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."  11 U.S.C. § 1129(a)(11).  "This statutory provision establishes what is commonly known as the 'feasibility' requirement, and as a practical matter it requires the court to find that the plan is 'workable' before it may be confirmed."  In re Danny Thomas Properties II Ltd. Partnership, 241 F.3d 959, 962 (8th Cir. 2001); In re Monnier Brothers, 755 F.2d 1336, 1341 (8th Cir.1985).

In determining whether a plan is feasible, the bankruptcy court has an obligation to scrutinize the plan carefully to determine whether it offers a reasonable prospect of success and is workable. United States v. Energy Resources Co., 495 U.S. 545, 549 (1990).  "Success need not be guaranteed."  Monnier Brothers, 755 F.2d at 1341.

> The test is whether the things which are to be done after confirmation can be done as a practical matter under the facts.  Pertinent factors to be considered include the business's earning power, the

7

> sufficiency of the capital structure, economic conditions, managerial efficiency, and whether the same management will continue to operate the company.

In re Clarkson, 767 F.2d 417, 420 (8th Cir. 1985) (citations omitted). The purpose of the feasibility test is to protect against visionary or speculative plans. Union Financial Services, 303 B.R. at 427. The mere prospect of financial uncertainty cannot defeat confirmation on feasibility grounds. In re Leslie Fay Cos., 207 B.R. 764, 789 (Bankr. S.D.N.Y. 1997).

### SUBSTANTIVE CONSOLIDATION

The Bankruptcy Code recognizes that, in appropriate circumstances, consolidation of one debtor with one or more debtors is authorized. In re Stone & Webster, Inc., 286 B.R. 532, 540-41 (Bankr. D. Del. 2002). "Though unusual, it is not inappropriate to propose substantive consolidation in a Chapter 11 plan." In re Affiliated Foods, Inc., 249 B.R. 770, 775 n.3 (Bankr. W.D. Mo. 2000). Such a plan can be confirmed if all parties have been accorded procedural due process, including appropriate notice of the plan's proposal for substantive consolidation. Id.

Substantive consolidation is the pooling of two or more debtors' assets and liabilities so that of each of the debtor's liabilities are satisfied from the common pool of assets created by the consolidation. The sole purpose of substantive consolidation is to promote the fair and equitable distribution of the debtors' collective assets. In re Huntco Inc., 302 B.R. 35, 38 (Bankr. E.D. Mo. 2003). Under § 302(b) and Rule 1015(b), the bankruptcy court may in its equitable discretion order substantive consolidation of cases involving two related debtors.

> Factors to be considered when deciding whether substantive consolidation is appropriate include 1) the necessity of consolidation due to the interrelationship among the debtors; 2) whether the benefits of consolidation outweigh the harm to creditors; and 3) prejudice resulting from not consolidating the debtors.

In re Giller, 962 F.2d 796, 798 (8th Cir. 1992). The court has the power to order less than a complete consolidation. Id.

8

## ANALYSIS AND CONCLUSIONS

The only elements of § 1129(a) which are in dispute are § 1129(a)(3) (good faith) and § 1129(a)(11) (feasibility). FL Trust does not cite a subsection of § 1129(a) in its argument concerning de facto substantive consolidation. The Court hereby concludes, after thorough review of the record, that Debtor has proved, by a preponderance of the evidence, that the Plan satisfies all the undisputed elements of § 1129(a).

The record supports a conclusion that Debtor proposed its plan in good faith under § 1129(a)(3). Debtor has accurately stated its debts and expenses and has not attempted to unfairly manipulate the Bankruptcy Code. Debtor has had the continuing purpose of reorganizing and rehabilitating, in order to preserve the value of its business and pay creditors in full.

FL Trust has not presented any evidence sufficient to undermine this conclusion. Its arguments regarding bad faith, as detailed starting on page 23 of its post-hearing brief, are not the type which would or should derail confirmation of Debtor's Plan. Furthermore, many if not all of these assertions have been proven to be unsubstantiated by the evidentiary record. The Court concludes that Debtor has met the good faith requirement of § 1129(a)(3) by a preponderance of the evidence.

The record supports the conclusion that Debtor's Plan is feasible under § 1129(a)(11). Debtor's Burger King stores suffered losses in the years leading up to its Chapter 11 petition, as had Burger King stores nationwide. Debtor's projections are based on conservative estimates of growth. The probability of such growth is supported by Debtor's successes postpetition. Burger King Corporation has made changes which will benefit Debtor's business. Debtor's vendors and creditors have continued to work with Debtor and support the Plan. The Unsecured Creditor's Committee is convinced the Plan will work to the benefit of creditors.

FL Trust's arguments regarding feasibility, as detailed starting on page 6 of its post-hearing brief, are unavailing. Although it is true that Debtor's projections are estimates and not completely reflective of historical performance, a plan need not guarantee success. Every Chapter 11 projection of future performance is necessarily speculative to the degree that no debtor has a crystal ball. Here, Debtor has adequately supported its projections. The Court concludes the

plan is workable and offers a reasonable prospect of success. Debtor has proved by a preponderance of the evidence that the plan is feasible and has met the standards of § 1129(a)(11).

FL Trust's final argument is that the Plan cannot be confirmed because it calls for "sub rosa" or "de facto" substantive consolidation.  This case and the cases of three other Chapter 11 Debtors have been interrelated from the day they were filed.  Debtors have never attempted to hide the connections between the cases.  The Court approved a Joint Disclosure Statement for the four cases on November 8, 2004. All parties have had every opportunity to be informed of the interconnectedness of these Debtors.  Every creditor has had a complete opportunity to examine the operations of this Debtor. This case has been thoroughly litigated.  There are no surprises left.

Having reviewed the Plan and the record as a whole, the Court concludes the Plan does not violate the principals of law regarding substantive consolidation of cases.  To the extent, if at all, the plan combines the assets and liabilities of BHC and Beaton, all creditors have had substantial notice of the Plan and all but FL Trust have no objections.  It is not inappropriate to propose complete or less than complete consolidation in a Chapter 11 Plan.  BHC's plan has already been confirmed without objection.  Some of BHC's creditors have contingent claims in Debtor's case based on guarantees.  It is not unreasonable that some elements of BHC's case would be relevant to Debtor Beaton, Inc.'s Plan. Most creditors, as well as the Court, would prefer a more clearly delineated corporate structure.  However, this is what is presented and this is what must be decided.  All relationships have been disclosed.  The resolution proposed is workable.  The Court concludes that FL Trust's arguments regarding improper substantive consolidation must be overruled and do not constitute impediments to confirmation of Debtor's Plan.

FL Trust is the only creditor which has objected to the Plan or voted against the Plan.  The Unsecured Creditors Committee supports Debtor's attempts to reorganize.  Debtor has made substantial efforts to treat its creditors fairly and correctly under the Bankruptcy Code.  It is noteworthy that the U.S. Trustee has had no objections to Debtor's conduct in this case.  To the contrary, Assistant U.S. Trustee Janet Reasoner made statements on the record regarding Debtor's substantial compliance with the requirements of Chapter 11 and FL Trust's litigiousness.  She stated: "I would have to say

that this case is somewhat disappointing from the standpoint that we've been here a year now and we don't have our confirmation at this point.  It appears this case has been grossly over-litigated."  Transcript at p. 14.  Ms. Reasoner also stated that FL Trust's assertion of bad faith regarding late filings of reports was "disingenuous at best."  Id. at 17.  "I just want to disabuse anybody that this debtor was not timely from the standpoint of the U.S. Trustee in getting these reports on file."  Id. at 16.  The Court concludes that Debtors have acted in consistent good faith and have presented a Plan which is not only minimally confirmable but provides a payment schedule which can be carried out with a high degree of probability of success.  No showing has been made which convinces the Court that this Debtor's plan should be denied confirmation.

**WHEREFORE**, the Third Amended and Restated Plan of Reorganization for Beaton, Inc. filed October 27, 2004 is CONFIRMED.

**FURTHER**, counsel for Debtor shall submit an appropriate order of confirmation.

**FURTHER**, judgment shall enter accordingly.

**DATED AND ENTERED** April 4, 2005

_____
PAUL J. KILBURG
CHIEF BANKRUPTCY JUDGE